IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION


UNITED STATES OF AMERICA

    v.                            CRIMINAL CASE NO.
                                      AMD-08-046

TROY HENLEY,

    Defendant



(Sentencing)
Friday, November 14, 2008
Baltimore, Maryland


Before:  Honorable Andre M. Davis, Judge



Appearances:

      On Behalf of the Government:
       Michael C. Hanlon, Esquire


      On Behalf of the Defendant:
       Stuart O. Simms, Esquire




Reported by:
Mary M. Zajac, RPR
Room 5515, U.S. Courthouse
101 West Lombard Street
Baltimore, Maryland 21201

1          (Proceedings at 12:30 p.m.)

2          MR. HANLON:  I call United States versus Troy Henley,

3     Criminal Number AMD-08-046.  This matter is set for sentencing.

4     Michael Hanlon for the United States.  I'm joined by Special

5     Agent Stacey Bradley.

6          MR. SIMMS:  Good afternoon, Your Honor.  Stuart Simms

7     on behalf of Mr. Henley, who stands to my right.  Your Honor,

8     we're ready to proceed.

9          Before you do proceed, Your Honor, I wanted to mention

10    one thing for your consideration.

11         THE COURT:  You may be seated, Mr. Henley.

12         MR. SIMMS:  Your Honor, we had issued on behalf of Mr.

13    Henley a subpoena on behalf of Gregory Eason in this case.  The

14    subpoena was issued just beneath, I think, the three week cutoff

15    for the U.S. marshals.  And the U.S. marshals advised yesterday

16    that Mr. Eason was not present.

17         Mr. Eason's presence was desired all the more because

18    given the nature as the Court will hear of the government's

19    response and its memorandum, it is the position of the defense

20    that in a sense they have given life to the testimony, or

21    purported testimony of Mr. Eason.  And we thought it would be

22    important to have Mr. Eason available for cross examination.

23         As the Court will hear from me in a moment, we think

24    the assessment of the enhancement in this case is in reality in a

25    sense is deprivation of due process with respect to this

1    individual.  For those reasons, we ask the Court to take under

2    advisement, and I will address later, to actually continue this

3    sentencing for that particular purpose.  That is, to have Mr.

4    Eason address the issues related to instruction and

5    organizer/leader as it relates to this particular case.

6            So we ask the Court for its indulgence and

7    consideration with respect to that request.

8            THE COURT:  Thank you, Mr. Simms.  Let me see if I can

9    get my head around the core of the dispute here.  First of all,

10   Mr. Eason, am I correct, Mr. Hanlon, pled guilty without a plea

11   agreement calling for his testimony?

12           MR. HANLON:  That's correct, Your Honor.

13           THE COURT:  And he's been sentenced?

14           MR. HANLON:  That is correct, Your Honor.

15           THE COURT:  So Mr. Hanlon, why don't you just focus me,

16   and then I'll give Mr. Simms an opportunity to respond, what is

17   it that Mr. Eason is critical to here?

18           MR. HANLON:  If I understand the defense's position,

19   Your Honor, Mr. Eason figures in this case in two respects.

20   Number one, with respect to the applicability of the supervisor

21   enhancement, and number two, with respect to the obstruction

22   enhancement.

23           THE COURT:  Is that because he would be the fifth

24   participant?

25           MR. HANLON:  I don't think that's the defendant's

1    argument because I could point to five participants regardless.

2                THE COURT:  I thought you could.

3                MR. HANLON:  But my guess, Your Honor, is that the

4    defense is probably proffering that they believe that if he

5    testified, Mr. Eason would say, A, Mr. Henley is no leader or

6    supervisor in this case.  That's my guess.  And B, and this is a

7    little bit more critical, I think, the Court recollects that we

8    played these recorded calls that Mr. Henley had engaged in from

9    the jail house.

10               THE COURT:  Oh, yes.  Right.

11               MR. HANLON:  One of the people that is mentioned during

12   one of these recorded calls is Jeezie.  And Mr. Henley is on tape

13   talking with a female about how if Jeezie gets on the stand,

14   this, that or the other thing is going to happen.

15               Mr. Eason is Jeezie.  My guess is that the defense is

16   anticipating or hoping that if Mr. Eason came to court would

17   testify, you know, I chose not to cooperate for my own reasons,

18   it had nothing to do with Mr. Henley that's my guess.  And I

19   think that those are the issues that Mr. Eason figures in.

20               THE COURT:  Okay.  Thank you.  Mr. Simms, is that

21   framed accurately?

22               MR. SIMMS:  Mr. Hanlon is very, very close.  And I

23   think it's very important because, as I've argued in the

24   submissions I've made to this Court, the government points to,

25   and I realize there's a basis for it in terms of federal

1    sentencing law and practice, but Mr. Hanlon points to

2    communications regarding this attempted obstruction that was

3    supposedly targeted with respect to Mr. Eason.  And we would

4    submit that it was not a communication that was tantamount to

5    obstruction.  And secondly, he was, that is Mr. Hanlon was

6    precisely correct in the sense that with respect to the

7    supervision issue, we believe that he would provide helpful

8    testimony.

9          THE COURT:  All right.  Well, I have to say, and I know

10   counsel won't be surprised to hear me say this, in light of, in

11   light of the 924(c) counts in this case which, if I'm not

12   mistaken, will require a sentence of 32 years minimum, I have to

13   confess, I am not, I'm not too obsessed about the precise

14   application of the guidelines.

15         MR. SIMMS:  Well, Your Honor --

16         THE COURT:  Not to suggest that that's not important

17   and shouldn't be.

18         MR. SIMMS:  Obviously, every year is an important

19   aspect to any individual's life.

20         THE COURT:  Yes.

21         MR. SIMMS:  Be it an accused or non-accused.  But in

22   this particular instance it is critical because, obviously, the

23   924(c) hangs like a pall over these very proceedings.  The

24   government can very well stand up and mechanically give a

25   recitation in this very proceeding.  But as I try to address and,

1    please, don't hold it against counsel --

2              THE COURT:  No, of course not.

3              MR. SIMMS:  -- in a diffused matter, I guess, in two

4    memorandums, is a sense that there is a future to this

5    individual.  And I'm suggesting to this Court that this Court

6    now, as it weighs the serious consequences of serious acts with

7    respect to this individual, has an important decision with

8    respect to whether or not it crosses a line that could be the

9    banishment in a real sense.

10             So to the degree of that, those sentences on Counts

11   One, Two, and Four, that this Court can examine and put together

12   a reasonable sentence that not only addresses the sanction and

13   the importance of a sanction as it relates to punishment of an

14   offense, there also is the history and characteristics of this

15   individual under 3553(a) that the Court can consider to try to

16   preclude at least an outright banishment or like what is

17   tantamount to perhaps a life sentence for this individual.  And

18   that's why it is important for purposes of these proceedings.

19             THE COURT:  I very much appreciate that, Mr. Simms.

20             MR. HANLON:  And, Your Honor, may I just offer one

21   thing?

22             THE COURT:  Yes.  Mr. Hanlon.

23             MR. HANLON:  On the same vein, I felt it was important

24   to put the government's assessments of the guidelines in a

25   legalistic kind of way.

1          THE COURT:  Absolutely.

2          MR. HANLON:  But I'm very aware of the fact that we're

3     looking at a 32 year mandatory.  And ultimately, I know really

4     that there's going to be more holistic approach to this

5     sentencing.  I'm certainly aware of that.

6          THE COURT:  I would never expect anything less from

7     you, Mr. Hanlon.  And frankly, you've never given the Court

8     anything less.  And I fully appreciate that.

9          So what I'm willing to do, Mr. Simms, is rather than

10    postpone the sentencing, which I'm sure you would, I'm not sure,

11    but I suspect you would confess, unless you're prepared to

12    represent that you've spoken to Mr. Eason --

13         MR. SIMMS:  I have spoken to his counsel, not to Mr.

14    Eason.

15         THE COURT:  Not to Mr. Eason himself.  So to that

16    extent, certainly, you can't have any real assurance of what Mr.

17    Eason is likely to say or will say.  But I just want to suggest

18    if, obviously, the Court can do nothing about the sentence on

19    Count Three, which is 84 months mandatory minimum, and Count Five

20    consecutive, which is 300 months, which is 384 months, which is

21    32 years.

22         Now, that leaves Counts One, Two, and Four, which,

23    under the probation officer's approach to the guidelines, would

24    result in a sentence of 210 months.

25         Now, Mr. Simms, if you can tell me, if you were to

1    prevail on all your issues, what would the sentence be on Counts

2    One, Two, and Four?  What are you urging the Court to do?

3            MR. SIMMS:  In my wildest dreams or in practicality?

4            THE COURT:  In practical terms.

5            MR. SIMMS:  I think, Your Honor, and with all due

6    respect, I realize that this is a solemn obligation for this

7    Court.  I'll try to be as precise as I can, Your Honor.  This is

8    obviously a critical moment for this defendant, this Court.  And

9    the events that unfolded with respect to this case were certainly

10   a considerable disruption to the community, caused harm to

11   individuals, caused business interruption, and certainly causes a

12   disruption to the life of Mr. Henley and his extended family,

13   many of whom are here today.

14           Our approach, Your Honor, basically was, as the Court

15   was aware in the memoranda, was, based on the history,

16   characteristics, and background, and based on his troubled youth,

17   we felt that this was an important aspect where the Court could

18   significantly vary from the recommended guidelines sentence.

19           We pointed to, and again, I apologize for the diffuse

20   approach, but the detention conditions under which he was under.

21   We pointed also to the lack of a substantial record and the lack

22   of a record with respect to history of weapons, and his relative

23   youth involving those first three offenses, and the fact that two

24   of those first three offenses were very closely related.

25           For those reasons, we would recommend a sentence of

1   beneath the recommended guidelines with respect to those counts.

2   And whether the level is 210 to 262, as the government would

3   suggest, we have suggested, obviously, if the Court accepted our

4   proposition with respect to whether or not supervisory

5   enhancement applied or whether the obstruction enhancement

6   applied, if they did not apply, our recommendation was even, even

7   adding to that the fact that he may be at perhaps a Level One

8   category criminal history, that the Court could sentence him to

9   as little as 70 months in this respect.

10          And so for those reasons, we felt it was appropriate to

11  recommend in this instance that, take into account all of that

12  and the fact that the 18 USC 924(c) hangs like a pall over these

13  proceedings, and the fact that given his criminal history and

14  given the purpose of the sentencing guidelines and its whole

15  focus on reasonability, that a sentence under 400 months could be

16  reasonable in this particular instance.

17          Believe me, we say that with no specific pleasure, with

18  the high number that it is.  But for a sentence to be above 450

19  months in this particular instance, we felt, based on the facts

20  and, again, I'm not here to retry the case in terms of the harm,

21  I've stated what those harms were, that we thought that the Court

22  could reasonably consider as a sentence in this case.

23          This Court has just heard in a prior proceeding and as

24  I've raised in the documents, that an individual's progress for

25  rehabilitation and lack of recidivism, those chances of success

1    increase with respect to age.  We think that any sentence above

2    400 months, I think, would go beyond the purposes of the act and

3    beyond the purposes in 3553(a).

4         Again, Your Honor, that's a diffuse approach with

5    respect to sort of where we are, so to speak.  But looking at

6    both the mechanics of the guidelines, looking at the purposes of

7    3553, looking at this individual in the context of a sanction

8    with respect to this offense, that's basically where we end up.

9         Again, I'm sorry for the length of my response.

10        THE COURT:  No.  No.  Not at all, Mr. Simms.  And by

11   the way, thank you for your memorandum.  And I thank the

12   government for its letter memorandum.  And I've reviewed the

13   letters that you attach to your sentencing memorandum and

14   appreciate your allocution.

15        It seems to me, and course I haven't heard from Mr.

16   Henley yet and I do want to hear from Mr. Henley, but it seems to

17   me that you certainly make a lot of sense and, frankly, I think a

18   sentence in excess of 40 years in this case would truly be beyond

19   what, what the legitimate purposes of sentencing would require.

20        The Court believes, therefore, that it really is not

21   necessary and, frankly, I would rather not make a final

22   determination, and I'll be perfectly clear about why, I would

23   rather not make a final determination as to the guidelines

24   applications because applying the 3553(a) factors, I think I can

25   achieve the same thing.

1        Of course, the J&C's going to have to say something

2    about what the final guidelines factors are.  And I appreciate

3    that.  But there will be an appeal in this case, of course.  And

4    potentially, while I think Mr. Henley got a fair trial and I

5    believe Mr. Simms provided absolutely the best conceivable

6    possible representation in this case, and I don't believe the

7    government or the Court made an error that deprived Mr. Henley of

8    a fair trial, the fact is there will be an appeal and an

9    appellate court will have a chance to review all of our work in

10   this regard.

11       So I'm prepared, Mr. Simms, without a final

12   adjudication of any guidelines factors, simply to accept the

13   probation officer's approach for purposes of sentencing, but then

14   resort to 3553(a) factors and impose a sentence of less than 40

15   months.  Now, I'm not going to say what that number is because I

16   haven't heard from Mr. Henley yet.  I'm not even sure if Mr.

17   Henley wants to address the Court.

18       But as Mr. Hanlon has candidly pointed out, I mean, we

19   start at 32.  The Court doesn't believe a sentence of more than

20   40 months is -- 40 years is appropriate.  So if we can proceed in

21   that fashion, then I don't think you need Mr. Eason and,

22   therefore, the need to continue this hearing would be obviated.

23       I mean, if you want to confer with Mr. Henley, please

24   do so.

25       (Pause in Proceedings.)

1          THE COURT:  Mr. Simms, I'm sorry.  I did want to say

2     one other thing about that.  And normally the Court doesn't go

3     through these kind of calculations.  But in a case of this sort,

4     I think it's entirely appropriate.

5          The fact of the matter is, if Mr. Henley behaves

6     himself, which I certainly hope he will, whatever sentence he's

7     sentenced to in the Bureau of Prisons, he of course will earn and

8     experience a sentence reduction of 55 days a year, approximately

9     two months.  And of course at the end of any sentence, unless

10    practice changes and who can tell 30 years from now, he will be

11    released to a community confinement type of situation.

12         So just so the record is clear, part of the Court's

13    analysis here takes into account the fact that although there is

14    no parole in the federal system, as we all know, the sentence

15    actually imposed, provided the defendant complies with the rules

16    and regulations of the Bureau of Prisons, there will be a not

17    insubstantial discount from the sentence that's imposed when a

18    sentence imposed of these many years is what's being served.

19              I just wanted to state that for the record, Mr. Simms.

20              MR. SIMMS:  Thank you, Your Honor.

21              THE COURT:  Before you talk to Mr. Henley.

22              (Pause in Proceedings.)

23              MR. SIMMS:  Your Honor, I was conferring with my

24    client.  And just after deliberating on it, he still wanted to at

25    least, and I on his behalf still want to make the request with

1  respect to considering having the individual here.

2          THE COURT:  Okay.  I'm going to deny the request.  I

3  understand why Mr. Henley would like to bring Mr. Eason in, in

4  the hope that Mr. Eason, I guess, would suggest or testify that

5  he was not intimidated and that the obstruction, the obstruction

6  enhancement shouldn't apply and to suggest, as has been

7  proffered, that Mr. Henley's role in this conspiracy in this

8  robbery gang did not rise to the level of a leadership position.

9  But I'm going to deny the request for a postponement.

10          I did approve, of course, as you know, Mr. Simms, I did

11  approve the request for the writ for the order.  And I was afraid

12  that it might be too late for the marshals and the Bureau of

13  Prisons to get Mr. Eason here.

14          By the way, where is he being housed?  Does anybody

15  know?

16          MR. HANLON:  I'm not sure, Your Honor.

17          THE COURT:  Did you find that out, Mr. Simms?

18          MR. SIMMS:  I did not, Your Honor.

19          THE COURT:  Okay.  But it does take several weeks for

20  the U.S. marshal and the Bureau of Prisons to move people around

21  around the country.

22          But I'm satisfied that the, that the way the Court has

23  proposed to proceed is reasonable and fair to Mr. Henley, that

24  without making a final adjudication of the specific guidelines

25  factors and relying instead on 3553(a) factors, the Court can

1  fashion a fair sentence -- I've already indicated that I don't

2  believe a sentence of more than 40 years is appropriate -- can

3  fashion a fair sentence, bring this matter to conclusion.  And

4  then should there be a need for further proceedings by way of

5  sentencing, the Court will have before it and, frankly, will

6  bring before it Mr. Eason or any other individual that the

7  defense or the government believes may be critical to the exact

8  application of the guidelines factors in fashioning an

9  appropriate sentence.

10        Clearly here, the big issue here, frankly, for Mr.

11  Henley is these 924(c) counts which must be consecutive to each

12  other and consecutive to any underlying offense.  And unless on

13  appeal or otherwise Mr. Henley is successful in overturning the

14  jury's verdict and thus the Court's judgment on those counts,

15  while every day counts for an incarcerated individual and his

16  family, no doubt about that, I believe that what the Court has in

17  mind to do is fair to Mr. Henley and that Mr. Eason's presence

18  and a full adjudicatory battle over the precise application of

19  the guidelines will not likely lead to any benefit to Mr. Henley,

20  and frankly, it could hurt Mr. Henley theoretically.

21        So I'm prepared to proceed.  And so I've reviewed your

22  presentence, your sentencing memorandum, Mr. Hanlon, and I thank

23  you for it.  Unless there's anything more you wish to offer to

24  the Court.

25        MR. HANLON:  Just very briefly, for the record, Your

1    Honor.

2              THE COURT:  Yes.

3              MR. HANLON:  The Court has mentioned the figure of 40

4    years a couple of times.  Understanding the Court has not yet

5    ruled.  Assuming the Court were to go in that direction, if I've

6    calculated correctly, that would be a, that would be the 32 year

7    mandatory sentence plus an additional 8 years or 96 months.

8              THE COURT:  I'm sorry.  I hope I wasn't misunderstood.

9    I didn't say I was going to impose 40 years.  I said I didn't

10   think a sentence of more than 40 years was appropriate.

11             MR. HANLON:  I understand that.  I do understand that,

12   Your Honor.  But I was just using it as a guideline only because

13   that figure is actually, I believe that would, assuming the Court

14   went that way, and I understand the Court hasn't made that

15   decision, but assuming the Court did, that would actually be

16   within the guidelines range that the defense proposed in their

17   sentencing memorandum, which was an alternative guidelines range

18   of 78 to 97 months.

19             THE COURT:  That's exactly right.

20             MR. HANLON:  -- on the robbery counts, which would

21   incorporate 96 months, which is a figure that would lead up, if

22   the court went to 40 years.  I only want to put that on the

23   record because it goes to --

24             THE COURT:  Of course.  Thank you.  I should have said

25   that myself, but it's perfectly obvious.  But I thank you for

1    saying that, Mr. Hanlon.

2           All right.  Mr. Simms, I thank you for your memoranda,

3    each of them.  I'll be glad to hear further from you.  Then if

4    Mr. Henley wishes to address the Court, of course I'll be glad to

5    hear from Mr. Henley.

6           MR. SIMMS:  Your Honor, you allowed me in the context

7    of responding to the Court's question to address some of the

8    overarching questions that are already at issue in this case.

9    And thank you for your indulgence with respect to that.

10          I think it's important, as we illustrated in the

11   memorandum, that the Court understands that Mr. Henley was not

12   dropped from outer space.  He did have a context within the

13   community.

14          The most recent submission that we've given to the

15   Court not only contained correspondence from Francine Hannah, who

16   is here today, who is in effect his real spiritual and guideline

17   mother for purposes of his life.  And that was a life that had,

18   quite frankly, significant challenges.

19          Many of those challenges were not documented because

20   this individual withdrew from school because of survival issues

21   with respect to his birth family, which were not good.  And he

22   has dealt with those.  And in the context of the relationships

23   that he's had both with Ms. Hannah, Ms. Hannah's daughter, and

24   Ms. Long, who's here today, who has submitted a letter to Your

25   Honor, I think have made this individual into a human being who

1    does have a sense of community, being in a sense of community

2    value.

3           He treasures -- and for that reason we did ask the

4    Court not to go in the direction of a sentence that was the

5    equivalent of banishment, part of that is not in the

6    relationships I set forth in the memoranda -- but, obviously, the

7    children who are referenced in the memoranda, including the most

8    recent photograph I was given of Taron, his youngest son.

9           So those issues are real and extremely important to

10    this individual, who we believe, while the evidence might suggest

11    crossed the line with respect to the community, still has the

12    opportunity to rejoin the community and participate in an

13    extraordinarily meaningful way.  And for those reasons, we had

14    asked the Court in a holistic fashion to not give the equivalent

15    of what would be tantamount to a life sentence or a sentence that

16    was unreasonable and excessive in terms of the application of any

17    guidelines.

18           May I confer with my client for a moment, Your Honor?

19           THE COURT:  Yes.

20           (Pause in Proceedings.)

21           MR. SIMMS:  The only other thing, Your Honor, is in my

22    memorandum I did indicate that in certain paragraphs of the

23    Presentence Report, specifically the latter part of that report,

24    the losses for both Wal-Mart and Check Point were noted.

25    However, for purposes of my recommendation and for purposes of my

1  argument here, we had gone with the figures that the government

2  had proposed in its statement of facts.  That was the aspects of

3  what they proved or what came into evidence in this case, and not

4  the losses themselves.

5        Your Honor, I have spoken to Mr. Henley.  Mr. Henley

6  thanks the Court for its offer to present a statement.  He feels

7  it's appropriate not specifically to address the Court on this

8  occasion.

9        THE COURT:  Very well.  Thank you, Mr. Simms.

10        Mr. Henley, you stand before the Court duly, and the

11  Court believes, fairly convicted of five counts.  From what I

12  heard about you and learned about you during this trial, I am

13  quite convinced that you had the potential to go in a very

14  different direction.  And I think it's very regrettable that you

15  chose the direction that you did.  It's a life that could have

16  been much more profitably lived for the community and for your

17  family and for yourself.

18        Some evidence of the excellent representation you

19  received, I believe, lies in the fact that Mr. Simms was able to

20  generate in the jury a reasonable doubt as to your involvement in

21  two of the robberies.  And that's a scant solace to you facing

22  the sentence that you're going to have to serve but I think, as I

23  said now several times, I think that the government's been fair

24  to you, the jury was fair to you.  I believe you got a fair

25  trial.

1    The activities of this gang terrorized many people.

2    And there was an element of callousness, arrogance and dishonesty

3    that will stay with me forever, having sat through these two

4    related trials, yours and Mr. Young's.

5    I only hope that you try to make something of your

6    life.  As I said, I don't believe a sentence that is de facto a

7    life sentence is appropriate.  But there's no doubt that a

8    lengthy sentence is appropriate because you do pose a danger to

9    the community.

10    So the Court believes a sentence of 72 months, 6 years,

11    on the underlying violations, bearing in mind the factors under

12    3553(a) and, most importantly of all, to avoid imposing a

13    sentence that is unduly lengthy and unlikely to achieve any

14    purposes of sentencing other than just keeping you away from the

15    community.

16    That's not, that's not to say you don't need to be kept

17    away from the community.  But certainly, it's the Court's hope

18    that by the time you're 60 years old, you will have rediscovered

19    a new Troy Henley.

20    So on Count One, Count Two, and Count Four, applying

21    the factors under 3553(a) and without a final determination of

22    the guidelines, the defendant is sentenced to 72 months

23    concurrent as to each count.

24    As to Count Two, I should say Count Three, the 924(c)

25    count, the defendant is sentenced to 84 months to be served

1    consecutively to the sentences imposed on Counts One, Two and

2    Four.

3           And on Count Five, the other 924(c) count, the

4    defendant is sentenced to a period of incarceration in the

5    custody of the Bureau of Prisons of 300 months, to be served

6    consecutively to the sentences imposed on Counts One, Two, and

7    Four and to the sentence imposed on Count Three, for a total

8    sentence of 456 months, with credit from January 18th, 2008.

9           As to supervised release, as to all five counts the

10    defendant is sentenced to supervised release on Counts One, Two

11    and Four, a period of three years; as to Counts Three and Five,

12    concurrent periods of five years, for a total period of

13    supervised release of five years to commence upon his release

14    from custody.

15           Restitution is ordered to be paid to Wal-Mart stores,

16    Inc., and Check Point Cashing jointly and severally with others

17    involved in those robberies in the amount of $86,000 to Wal-Mart

18    and $43,000 to Check Point; the amounts to be paid during the

19    period of supervised release in the minimum monthly amounts of

20    $250 a month.

21           The Court has no realistic expectation that the

22    defendant will make these payments.  And so Mr. Simms, if you

23    want to file a Motion For Reconsideration on the restitution, the

24    Court will look at that.

25           On special assessments, $100 per each of the five

1   counts of conviction, of a total of $500.  The defendant is to

2   pay the special assessment immediately.  The reason the Court

3   says immediately, Mr. Henley, is to make it possible for you to

4   get employment as soon as possible when you report to the Bureau

5   of Prisons.

6               Is there anything further from the government?

7               MR. HANLON:  No, Your Honor.

8               THE COURT:  As to -- oh, yes.  You do have a motion

9   with respect to the original indictment?

10              MR. HANLON:  I apologize, Your Honor.  The government

11  does move to dismiss the original indictment at this time in

12  light of the superseding indictment.

13              THE COURT:  So ordered.  Anything further, Mr. Simms?

14              MR. SIMMS:  Your Honor, only that there wasn't

15  sufficient time prior to this proceeding to get all the

16  documentation.  By virtue of the Court's sentence it does not

17  preclude Mr. Henley nor me, with his assistance, of pursuing.  He

18  was arrested on state charges very similar to these.  And so

19  administratively he's not barred from pursuing with the Bureau of

20  Prisons perhaps credit for that time, if he might be eligible.

21              THE COURT:  Absolutely.

22              Mr. Henley, you have the right to appeal at no cost.

23  You're represented by appointed counsel.  Your notice of appeal

24  must be filed with the clerk within ten days of the entry of the

25  judgment of conviction.  I expect that to be today.  I know that

1  Mr. Simms will see to that and get that taken care of in a timely

2  fashion.

3        And you will be appointed counsel by the appellate

4  court to represent you in the appeal.  That will probably be Mr.

5  Simms, but it could be someone else.  But you will have the

6  effective assistance of counsel in pursuing your appeal in this

7  case.  Do you understand that, sir?

8        THE DEFENDANT:  Yes.

9        THE COURT:  All right.  Counsel, thank you very much.

10        (Conclusion of Proceedings at 1:12 p.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    REPORTER'S CERTIFICATE

2

3          I, Mary M. Zajac, do hereby certify that I recorded

4    stenographically the proceedings in the matter of USA v Troy

5    Henley, Case Number(s) AMD-08-046, on November 14, 2008.

6          I further certify that the foregoing pages constitute

7    the official transcript of proceedings as transcribed by me to

8    the within matter in a complete and accurate manner.

9          In Witness Whereof, I have hereunto affixed my

10   signature this _____ day of _____, 2008.

11

12

13

14                        _____

                          Mary M. Zajac,
15                        Official Court Reporter

16

17

18

19

20

21

22

23

24

25